# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FAWN M. LOOSE,

                Plaintiff,

      v.                                                    Case No. 18-CV-1266

ANDREW M. SAUL[1],
Commissioner of Social Security,

                Defendant.

# DECISION AND ORDER

## INTRODUCTION

Plaintiff Fawn Loose alleges she has been disabled since November 3, 2011 (Tr. 39) and "is unable to work due to a combination of her impairments," which include both physical and mental impairments (Tr. 46). In August 2012 she applied for supplemental security income. (Tr. 185-90.) After her application was denied initially (Tr. 90-104) and upon reconsideration (Tr. 105-18), a hearing was held before an administrative law judge (ALJ) on May 27, 2015 (Tr. 60-89). On August 27, 2015, the ALJ issued a written decision concluding Loose was not disabled. (Tr. 39-53.) The Appeals Council denied Loose's

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

request for review on November 18, 2016. (Tr. 13-15.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 13), and this matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Loose "has not engaged in substantial gainful activity since August 1, 2012, the application date[.]" (Tr. 41.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Loose has the following severe impairments: "obesity, history of right carpal tunnel syndrome surgery, cervical spine disc protrusion, patellofemoral chondromalacia, affective disorder, anxiety disorder, pain disorder, and alcohol/substance abuse disorder[.]" (Tr. 41.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix, 20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d), and 416.926 (called "The Listings"). If the impairment or

2

impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis then proceeds to the next step. The ALJ found that Loose "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 42.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded Loose has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except: [Loose] can never climb ladders, ropes, or scaffolds, and no more than occasionally climb ramps and stairs, balance, stoop, crouch, crawl, kneel, bend, or twist. [Loose] must avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery. [Loose]requires a sit-stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes. [Loose] can reach no more than frequently with both upper extremities, and use her right hand no more than frequently to handle, finger, and feel. [Loose] is limited to understanding, remembering and carrying-out simple routine tasks, with no public contact for work-related

3

purposes and no more than occasional contact with co-workers and supervisors. [Loose] cannot have hourly quotas but can do work that is measured by what is completed by the end of the workday.

(Tr. 45-46.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Loose's past relevant work was as a janitor and order picker. (Tr. 51.) The ALJ determined that Loose "is unable to perform any past relevant work[.]" (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. At this step the ALJ concluded that, "[c]onsidering [Loose's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Loose] can perform." (Tr. 51.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Loose's age, education, work experience, and RFC could perform the requirements of occupations such as address clerk, accounts clerk, and bench sorter. (Tr. 52.) After finding that Loose could perform work in the national economy, the ALJ concluded she was not disabled. (*Id.*)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

## ANALYSIS

Loose argues that the ALJ erred (1) by failing to evaluate the "[f]unctional [i]mpact" of Loose's angry outbursts; (2) in improperly dismissing her sleep apnea; and (3) by not supporting her determination of Loose's work ability. (ECF No. 16 at 11-19.)

## I. Angry Outbursts

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Dr. Robert Schedgick, a licensed psychologist, evaluated Loose. (Tr. 358-75.) In his report, Dr. Schedgick found:

> Her social skills are problematic. She has difficulty communicating her wants, needs, and desires. She seems to have some passive aggressive features. She has difficulty modulating her anger. Sometimes she can become quite aggressive. She admits to pulling a knife and threatening her boyfriend a few weeks ago. She can be obnoxious and disruptive.

(Tr. 373.) Nonetheless, Dr. Schedgick concluded that Loose's "work capacity is adequate. She can understand, remember, and carry out instructions without difficulty. She probably can interact if she chooses to do so with supervisors, coworkers, and the general public without problems." (Tr. 374.)

The ALJ held:

> In social functioning, [Loose] has moderate difficulties.…Additionally, [Loose] reported she is able to go out alone and shop for 30-60 minutes at a time without evidence of any abnormal behavior such as getting into confrontations, episodes of anger, hallucinations, delusions, or paranoia. Furthermore, [Loose] testified that she holds rummage sales, indicating she is able to interact with customers.…

(Tr. 44 (internal citations omitted).)

Loose contends the ALJ failed to evaluate the "[f]unctional [i]mpact" of her angry outbursts. (ECF No. 16 at 11-13.) Although in her reply Loose argues the Commissioner did not respond to this argument in his brief (ECF No. 25 at 2-3), the Commissioner *did*

address Dr. Schedgick's findings of Loose's social issues, stating, "[b]ut, even accounting for those issues, Dr. Schedgick concluded that Plaintiff still could probably interact with supervisors, coworkers, and the public without problems—should she choose to do so" (ECF No. 24 at 6-7).

By addressing the evidence that Loose interacts with other people without experiencing "episodes of anger" while shopping, and that she interacts with others at her rummage sales, the ALJ did address her angry outbursts. The ALJ even included a limitation in the RFC that Loose should have "no public contact for work-related purposes and no more than occasional contact with co-workers and supervisors." (Tr. 45-46.) Accordingly, the ALJ did not fail to consider the effect of Loose's angry outbursts.

## II.     Sleep Apnea

Loose also argues the ALJ erred by dismissing her sleep apnea. (ECF No. 16 at 13-15.) The ALJ stated,

> [Loose's] records also show treatment for a sinus disorder and mention of obstructive sleep apnea. However, there is no evidence in the record of these impairments resulting in any functional limitations. As such, the undersigned finds that the above impairments are not severe impairments as defined in 20 CFR 416.920(c), and SSRs 85-28 and 96-3p, in that they do not cause more than a minimal limitation of physical or mental ability to do basic work activities.

(Tr. 42 (internal citations omitted).)

Loose contends that "[t]his reasoning by the ALJ is factual error because [she] reported excessive fatigue and sleepiness, daytime tiredness, and the need to nap." (ECF

7

No. 16 at 13.) The Commissioner argues that a mere diagnosis is not sufficient "to demonstrate significant limitations," nor is relying on "subjective allegations…enough to show disabling symptoms." (ECF No. 24 at 18.) As the Seventh Circuit stated, "[a claimant's] subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citing *Carradine v. Barnhart*, 360 F.3d 751, 764 (7th Cir. 2004) (Coffey, J., dissenting)); *see also Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (unpublished) (citing *Rice v. Barnhart*, 384, F.3d 363, 371 (7th Cir. 2004)) ("There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions.").

The ALJ noted "mental status examinations from March 11, 2014 and August 1, 2014 both noted that [Loose] was alert, friendly, and trustful with a relaxed mood and appropriate affect" (Tr. 49), and "[Loose] can operate a vehicle, and has the mental capacity to go places alone and organize and run rummage sales, thus she is able to be alert" (Tr. 50). Moreover,

> [t]he record reflects that [Loose] has made inconsistent statements regarding matters relevant to the issue of disability. For example,…[Loose] made numerous inconsistent statements to the psychological consultative examiner, including regarding her work history and work performance, her substance abuse history, and her medication compliance. These discrepancies diminish the persuasiveness of [Loose's] subjective complaints and alleged functional limitations.

(Tr. 49.)

8

Because the ALJ's reason for dismissing Loose's sleep apnea was supported by substantial evidence that she was alert at medical appointments and was alert enough to carry out tasks such as driving or organizing rummage sales, the ALJ did not err by dismissing her complaints of sleep apnea.

**III.  Work Ability**

Loose asserts that, "[i]n assessing [her] work ability, the ALJ must identify the record basis supporting the residual functional capacity finding; any finding of work ability which the ALJ does not properly ground in the record cannot withstand substantial evidence review." (ECF No. 16 at 15.) Loose first argues that the ALJ "relied on no opinion evidence in finding [she] could perform this range of sedentary work." (*Id.* at 16.)

Pat Chan, M.D. and Mina Khorshidi, M.D. are both medical consultants with the State Agency who examined Loose. (Tr. 50.) Contrary to Loose's argument, the ALJ gave "partial weight" to their opinions. (*Id.*) The ALJ explained,

> The undersigned gives partial weight to the opinions provided by Pat Chan, M.D., the State Agency medical consultant at the initial level, and Mina Khorshidi, M.D., the State Agency medical consultant at the reconsideration level, who both opined that [Loose] could perform a reduced range of light work. Although Drs. Chan and Khorshidi are non-treating, non-examining medical sources, their opinions are based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations. The undersigned finds these opinions are internally consistent and well supported by a reasonable explanation and the available evidence. However, the State Agency medical consultants restricted [Loose] against even moderate exposure to hazards, indicating extreme limitation in this area. The undersigned finds that avoiding

9

> concentrated exposure to work hazards is more appropriate, as [Loose] can operate a vehicle, and has the mental capacity to go places alone and run rummage sales, thus she is able to be alert. However, after reviewing the entire record, including the evidence submitted at the hearing level, the undersigned finds that on regular basis, sedentary work is more appropriate for [Loose] when considering all of her impairments, together, including her obesity, knee impairments, and history of carpal tunnel syndrome which could impact ability to lift more than ten pounds for work-related purposes.

(Tr. 50.) Thus, it is not accurate to say that the ALJ "relied on no opinion evidence in finding [she] could perform this range of sedentary work."

The Commissioner notes,

> Dr. Khorshidi indicated that [Loose] had no postural limitations. But Dr. Chan opined that [Loose] could only occasionally climb stairs, stoop, kneel, crouch, and crawl. The ALJ incorporated all of Dr. Chan's postural limitations into her RFC finding.
>
> The ALJ also gave more limiting restrictions than both Drs. Chan and Khorshidi in a number of areas. Drs. Chan and Khorshidi opined that [Loose] could stand and/or walk about six hours in an eight-hour day, and could lift and/or carry twenty pounds occasionally and ten pounds frequently. The ALJ went further, restricting [Loose] to sedentary work. Such work required standing and/or walking for "no more than about 2 hours of an 8-hour day." It also involved "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Similarly, while Drs. Chan and Khorshidi indicated no balancing or manipulative limitations, the ALJ restricted [Loose] to only occasionally balancing, frequently reaching, and frequently handling, fingering, and feeling with her right hand. The ALJ also provided [Loose] with an option to stand for one-to-two minutes after sitting for thirty minutes, an accommodation not offered by Drs. Chan and Khorshidi. The opinions of Drs. Chan and Khorshidi stand for [Loose] being able to perform at least the abilities contemplated in the ALJ's RFC finding.

(ECF No. 24 at 13-14 (internal citations and footnote omitted).)

Loose argues that "[m]erely assigning some random lesser work ability than opinion evidence the ALJ did not find fully supported does not fulfill the Commissioner's mandate to demonstrate the functional capacity finding is supported by substantial evidence." (ECF No. 25 at 7.) The court agrees. The ALJ's RFC determination must be supported by substantial evidence from the record. On remand, the ALJ must explain the basis for her RFC finding.

Second, Loose argues that "the ALJ's legally erroneous independent medical decision-making is highlighted by the ALJ's finding of Ms. Loose's need for a sit and stand option." (ECF No. 16 at 16-17.) Even though Loose believes she can only sit for fifteen minutes (Tr. 70), the ALJ held that "Loose requires a sit-stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes." (Tr. 45.) Loose argues this is a grave error "because the ALJ neglected to set forth an assessment of the aggregate effect of her back degeneration and morbid obesity." (ECF No. 16 at 17.)

The ALJ stated that the thirty-minute sitting limitation was put in place because of Loose's weight. (Tr. 43.) ("[T]he undersigned has determined that [Loose] would have some additional limitations resulting from her weight and it is, in part, the reason why she has several postural limitations and was given the option to change positions after sitting for 30 minutes for 1-2 minutes at a time.") The ALJ further found "that [Loose's] record does not support the finding of any greater restrictions than those provided in the [RFC]." (Tr. 46.) However, the ALJ did not explain in what way Loose's weight supported

a finding that she could sit for thirty minutes at a time as long as she could stand up for a couple of minutes after thirty minutes, particularly when Loose says she can only sit for fifteen minutes at a time.

Although the ALJ is not required to accept Loose's subjective complaints if they are not consistent with the medical evidence, *Arnold*, 473 F.3d at 823, the ALJ "must build an accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Accordingly, remand is appropriate so that the ALJ may support that limitation with substantial evidence.

Third, Loose argues that the ALJ erred by not taking into account the entirety of the reports of Drs. Musholt and Donahoo. (ECF No. 16 at 17-18.) Specifically, Loose alleges the ALJ erred in not assessing the doctors' findings that "Loose would have moderate limitations in her ability to respond appropriately to changes in the workplace" and "Loose would be moderately limited in her ability to ask simple questions or request assistance." (*Id.* at 18 (internal citations omitted).) It is true that the ALJ did not specifically explain how these findings factored into the RFC. Nevertheless, Loose does not say what additional limitations the ALJ should have added based on these findings. *See Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (unpublished) ("Here the ALJ did not explicitly discuss the exacerbating effects of [plaintiff's] obesity on her other limitations when arriving at her RFC, but the error was harmless. [Plaintiff] did not articulate how her obesity exacerbated her underlying conditions and further limited her functioning—

as it was her burden to do." (internal citation omitted).) Additionally, as the Commissioner argues, "that Plaintiff had moderate limitations does not mean that she was disabled." (ECF No. 24 at 11.) As such, the ALJ did not err by failing to account for Loose's moderate limitations in responding to workplace changes or ability to ask questions.

Finally, Loose argues that "[a]s a final example of the lack of support for the functional capacity finding, the ALJ did not explain why she determined that Ms. Loose could not meet an hourly quota but could meet an end of the day production requirement." (ECF No. 16 at 18.) Even though, as the Commissioner argues, "Dr. Schedgick did not indicate that Plaintiff was so limited" (ECF No. 24 at 7), the ALJ should explain why she finds that Loose could still meet an end of the day requirement. Since the ALJ includes no explanation for this finding and it appears to be arbitrary, remand is appropriate so that the ALJ may support that limitation with substantial evidence. *See Garner v. Berryhill*, No. 1:18CV211, 2019 WL 1324605, at *10 (N.D. Ind. Mar. 22, 2019).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of August, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge